460                                  Foster et al. v. The State of Ohio.

467                                           CRIMINAL LAW.                                           .

[Butler Circuit Court, April Term, 1886.]

Cox, Smith and Swing, JJ.

ROBERT FOSTER ET AL. V. THE STATE OF OHIO.

1. INDICTMENT DOES NOT ALLEGE DISTINCT OFFENSES.

An indictment, which with other proper averments, charges, that three defendants unlawfully made an assault upon another person, and did then and there unlawfully have carnal copulation, against nature, with such person, is a good indictment under the act of May 4, 1885, O. L., vol. 82, page 241 ; and a motion to quash the same, on the ground that [it] is bad for uncertainty, repugnancy and duplicity, and a demurrer thereto for the reason "that the facts stated therein do not constitute an offense punishable by the laws of this state," were properly overruled.

2. DECLARATIONS OF INJURED FEMALE AS EVIDENCE IN SODOMY CASE.

While it is the clear rule of the law, that in prosecutions for the crime of rape, the declarations of the injured female, made shortly after the alleged criminal act, as to the commission thereof, are competent evidence for certain purposes, this being an exception (founded on necessity) to the general rule as to hearsay evidence, there is strong ground for holding that it must not be extended to prosecutions under the sodomy statute—the reasons which exist for the rule in the one case, not existing in the other, and there appearing to be no authority which holds such evidence to be competent.                                   .

3. SUCH EVIDENCE PERMISSIBLE IN CORROBORATION.

But even in prosecutions for rape, such statements of the prosecuting witness are only competent, as tending to corroborate her evidence given upon the witness stand. And where in a prosecution for sodomy, the bill of exceptions taken in· the case, shows, that the trial court, against the objection of the defendants, allowed evidence to be given of the statements and declarations made by the person alleged to have been assaulted, to other persons, shortly after the time the act was said to have been committed, as to the manner, and by whom it was done, "for the purpose of further maintaining the issues on the part of the state of Ohio, and to prove the allegations in said indictment contained," and the bill of exceptions does not show that the person injured was examined as a witness in the case, it was error to receive such evidence at all, or if such person had been examined as a witness to receive it for such a purpose.

4. RULE OF EVIDENCE IN SODOMY CASES.

Section 7297, Revised Statutes, as a rule of evidence, is applicable as well to prosecutions for sodomy as to those for rape.

ERROR to the Court of Common Pleas of Butler county.

SMITH, J.

The errors assigned in this case are, that the court erred in the overruling of the motion to quash the indictment; in refusing to sustain the demurrer to the indictment; in admitting incompetent evidence, and in refusing to charge the jury as requested; and in the charge as given to the jury.

Should the court have sustained the motion to quash? It is urged that the indictment was bad for uncertainty, repugnancy and duplicity. That it charges two or more separate offenses in one count, and improperly charges against the three defendants the joint commission of a crime, which, from its nature, cannot be committed by three persons at the same time.

Section 7249, Revised Statutes, provides, that "a motion to quash may be made in all cases when there is a defect apparent upon the face of the record, including defects in the form of the indictment, or in the manner in which an offense is charged."

The indictment in this case is substantially as follows : It charges, " that Michael O'Connor, Robert Foster and John Wilson, on the 29th day of December, 1885, at the county of Butler aforesaid, in and upon one Christian Ramsayer then and there being, unlawfully did make an assault, and then and there unlawfully did have carnal copulation against nature, with him the said Christian Ramsayer, the said Christian Ramsayer being then and there a human being, and then and there unlawfully did carnally know him, the said Christian Ramsayer, and then and there, unlawfully and against nature, did commit and perpetrate the detestable and abominable crime of sodomy, contrary to the form of the statute," etc.

The claim is made by counsel for the plaintiff in error, that, in effect, this indictment, in the one count, charges each of the defendants with a separate and distinct crime. That as in the nature of things, it is impossible that three men should, at the same time, have carnal copulation against nature with a fourth, that the criminal act here charged must be held to be a separate one against each of these defendants, and that this is in direct conflict with well established rules of criminal pleading. And if such is the interpretation to be placed upon the language of the indictment, there can be no doubt but that the motion should have been sustained; for it is the general rule, that it is not allowable to charge one defendant with two or more distinct and separate offenses in the same count, or in one indictment to charge two or more persons each with a separate and distinct offense. Each defendant is entitled to have his case presented by itself, and not have another person, charged with an altogether different offense, joined with him. It is only when the allegations of the indictment show, that *all* of the defendants charged therein, participated in the *same* offense, that they can be jointly charged in the same indictment.

But does this objection properly lie to this indictment? It has been urged with much ability and force that it does. But it will be observed that the charge in question is one against *all* of these persons, and of participation by them in one act. It alleges in effect, that the three jointly made an assault upon Ramsayer—one assault—and that they then and there had carnal copulation with him against nature, still one other act charged—and while it may be true that this last criminal act so charged could not have been actually performed by more than one of them at the same time, it does not follow in our opinion ·that all of the three might not have been properly found guilty of the offense so charged. It is one of the most familiar principles of criminal law, that where the criminal act in question, is actually committed by one of several defendants, as for instance the blow which takes the life of another, yet those who are present, aiding and assisting in the act, are equally guilty as principals.

But an examination of the authorities shows that the question as to the form of the indictment in such cases is not a new one, but that it was long ago adjudi-

cated by the courts in England and our own country.    Thus in 2d Archbold's Criminal Practice and Pleadings, page 161, in a discussion of the question as to the proper form of indictment under the statute punishing rape, (and which, in this particular, is applicable as well to indictments for sodomy), cases are cited which show that the objections made to this indictment are not well taken.    See Rex v. Filkes R. & M. C. C. R., 354; Rex v. Borgess, Trin T., 1813.

This would seem to settle the question even at common law; but in view of section 6804, Revised Statutes, which provides, " that whoever aids, abets or procures another to commit any offense, may be prosecuted and punished as if he were a principal offender," and of the decisions of our Supreme Court made upon it, it is especially true in Ohio.    See State v. Munson, 25 O. S., 383; Hartshorn v. State, 29 O. S., 635, and 42 O. S., 150.

But while the objection made to this indictment, in our view, is not tenable, we incline to the opinion that the criticism made of the one in the case of Rex v. Borgess, above cited, has weight in this case, and that form of it is not to be commended.    It is likely, that under a charge of this kind, injury might result to the defendants in the introduction of evidence, owing to the uncertainty as to what act, or of which defendant, it is intended to complain.    If there was, in fact, a carnal copulation by each of these three defendants with Ramsayer (which perhaps might be inferred from its language), the others aiding and abetting in each, then each of the defendants was guilty of three separate and distinct offenses, and under proper indictments might be convicted thereof.    But under this indictment, evidence ought not to be given as to more than one such act, and if offered as to other acts it should be excluded or the prosecuting attorney be required to elect as to which *act* he relied on for conviction; but under an indictment like the one in question, all of the defendants might properly be convicted, if the proof showed that all had participated or assisted in the commission of the one criminal act.

Was the demurrer to the indictment well taken?    It states five grounds, one only of which is authorized by the statute.    Section 7251, Rev. Stat., provides that "the accused may demur when the facts stated in the indictment do not constitute an offense punishable by the laws of the state, or when the intent is not alleged and proof of said intent is necessary to make out the offense charged."    The causes of demurrer set out in this case are, that it does not charge any offense, and in addition it objects to the form of the indictment, on the grounds set out in the motion to quash, and which have been disposed of.

The reason upon which the claim is founded that it does not state facts sufficient to constitute an offense under our law, is that it does not aver that the defendants, or either of them, are male persons.

The statute under which they are indicted provides, "that whoever shall have carnal copulation against nature with another human being, or with a beast, shall be deemed guilty of sodomy."

It is to be noted that the term, "man" or "male person," is not used in the statute defining the crime.    It states what constitutes the offense, and a person of either sex may be guilty under it; yet it is plain that when the act charged is copulation against nature, that at least one of the parties to it must be a male person.    A reasonable interpretation should be placed upon the language of the indictment.    In the first place it appears that the Christian names of all the defendants as set out in the indictment, are names almost universally applied to male persons—and this is a fact not without weight.    The same thing is true of the person upon whom the assault is said to have been made.    It says that he was a human being, and the personal pronoun *him*, denoting the male sex, is used with reference to him, and as in the nature of things the party committing the act here charged, must be a male person, we think the indictment does allege the fact with sufficient certainty, and that this objection to it is not well taken.    But it may be further said on this point, that at common law it does not appear to have been necessary, in an indictment either for rape, or sodomy of the character

here charged, to make an express allegation, either that the defendant was a male person, or that the person ravished was a female, or in a crime against nature to disclose the sex of either. See for form of indictment in such cases: 2nd Archbold's Criminal Practice and Pleading, page 159 and 185.

Was there error in the charge of the court as given, or in refusing to charge as requested? Before the argument commenced, the counsel for defendants asked the court to give the following special charges to the jury: "1st. That copulation is the coupling of the sexes in the act of procreation, and to constitute this copulation, there must be both penetration and emission: that is, there must be both penetration of the penis of the male, and the emission of seed therefrom into the womb or vagina of the female." And 2nd. "That copulation against nature requires both penetration and emission of seed, as in the act of procreation when performed in the natural way." The court refused to give either of these charges, but did say to the jury as to the first point, that in a case of this kind it was only necessary for the state to prove penetration, and that it need not be shown that there was any emission of seed—to each and all of which rulings the counsel for defendants excepted.

The first charge asked, we think, was properly refused. The court was requested to say, in direct opposition to the plain meaning of the statute, that under it there is no such crime as sodomy—that carnal copulation can only be had between the two sexes and in the usual and ordinary mode—which of course is not a crime; and such certainly is not the law.

As to the second charge asked for, we may say that it was undoubtedly the law in Ohio (and so declared by the Supreme Court), before the passage of the statute changing the rule, that to constitute the crime of rape, there must be, not only penetration, but emission of seed; and in the absence of any statute on the subject as to sodomy, it might well be that the rule would be the same. But we think that the objection is removed, and proof of emission in such cases rendered unnecessary by the terms of section 7297, Rev. Stat., which provides, "that carnal knowledge, or sexual intercourse shall be deemed complete upon proof of penetration only."

But the most serious and difficult question which we meet in this case is, whether the court erred in admitting the evidence of Jackson and Brown, two witnesses on the part of the state, as set out in the bill of exceptions, and for the purpose as therein indicated. At the trial, Jackson was examined, as set forth in the bill, by the state " to further maintain the issues upon its part." And he testified against the objection of the defendants to a conversation had by him with Ramsayer, about one or two hours after the alleged assault upon him, which conversation was not had in the presence of the defendants, or of either of them, and stated to the jury that Ramsayer had then told him about the commission of the offense by the defendants, and how it was done.

The bill of exceptions also states that, " to further maintain the issues on the part of the state of Ohio, and to prove the allegations in said indictment contained, the prosecuting attorney offered John A. Brown as a witness," and he testified against the like objection of defendants, to a conversation had by him the next morning, in the absence of all of the defendants, and was allowed to state what Ramsayer told him as to the commission of the act by defendants, and how it was done. To all of these rulings of the court, proper exception was taken.

Now, whether any of this evidence was admissible at all is a matter of great doubt. We think it was not. It was clearly hearsay, and thus incompetent, unless it comes within the exception made in prosecutions for rape. It is clear that when a person is on trial, charged with that crime, that " the declarations made by the injured female to third persons, immediately after the offense was committed, are competent and proper evidence to sustain and corroborate her testimony as delivered in court; but such declarations are not competent testimony

in chief, to be considered as substantive evidence to prove the offense." 17 O. 593; 18 O. 99; 8 O. S. 643.

But the question here is, whether the law is the same in cases like the one at bar. We are entirely unable to find any authority which holds that it is—the case of rape, in this respect, seems, so far as we can see, to be an exception to the general rule, and we suppose, as counsel for plaintiffs in error has argued, that it stands on this principal—that as to constitute rape the sexual act should have been committed against the will and consent of the woman, that her declarations, made at the first opportunity, are received (almost or entirely from the necessity of the case), to disprove any consent on her part, or rather to corroborate her statement as to this, by showing that she acted as the instincts of every virtuous and outraged woman would prompt her to act, in making outcry and complaint at the first opportunity. If this were not allowed to be shown, it might be claimed with plausibility, that she had consented to the act. At any rate, for whatever reason, such has been the undisputed law for many years, and the books are full of decisions admitting such evidence as competent. But the fact that no such rule is anywhere announced as applying to prosecutions for sodomy (though it has in most of the states and countries always been a crime), is a potent argument that such is not the law. It may be, and is argued, that there is the same necessity for it in the one case as in the other—but this is not true, for it must be considered that in sodomy cases, the question of consent of the party with whom the act is committed, is not a material one. The crime is complete in either case if the act be committed, and there would seem to be no stronger reason for breaking down or extending the salutary doctrine as to the incompetency of hearsay evidence in cases of this kind, than in a variety of others which might be named; and if we were to uphold the ruling here complained of, we fear that we would be making, instead of simply declaring, the law.

But as there are other reasons which seem to us to render this evidence clearly incompetent, and for the purpose for which the bill states it was received, we do not definitely decide the question; but with the suggestions which we have made upon the subject, leave it to the further consideration and examination of counsel, and of the court called upon to decide it, if the question should again arise.

There are two reasons which constrain us to hold that the trial judge erred in his rulings as to this evidence. And, first, the record distinctly states that it was received for a purpose for which it was not admissible. I have cited the authorities which show that evidence of this character, even in prosecutions for rape, can only be received to corroborate the evidence of the injured person. In this case it is stated in the bill of exceptions, that the evidence in question was offered and received to prove the allegations of the indictment. This is in direct conflict with the holding of the Supreme Court in 17 O. 593.

*Second.*—But in addition to this, it nowhere appears in the bill of exceptions or record, that Ramsayer himself was examined as a witness in the case. If he was not, the evidence should not have been received at all—for that it can only be admitted when such person was examined as a witness, is shown not only by the cases already cited, but is directly held in 35 O. S., 277.

It may be said that the bill does not *exclude* the idea that he was so examined as a witness. This is true ; but the objection was made to the reception of the evidence, and being competent only in a certain event, and for a special purpose, we think the facts which would make it competent in that case, should affirmatively appear from the record.

We incline to the opinion, that if the bill of exceptions contained a full account of all that took place at the trial, that neither of these objections would in fact be found to exist. We think it highly probable that Ramsayer was examined as a witness, and from our knowledge of the ability and long experience of the trial judge, we have ground to think that he informed the jury that the

evidence of these witnesses was admissible only to corroborate that of Ramsayer. But the difficulty is, that the bill itself, doubtless by oversight, shows neither of these things to be so ; but on the contrary, as to one of them, excludes that idea. The result is, that the judgment must be reversed and the cause remanded to the court of common pleas for a new trial, or for such other proceedings· as may be warranted by law.

John F. Neilan, for plaintiffs in error.

W. C. Shephard, prosecuting attorney, for the state.

(*Mem.*—On a retrial of one of the defendants, a verdict of guilty of a simple assault was rendered, and the other defendants were allowed to plead guilty to the same offense.)